1   Kristen Lake Cardoso (SBN 338762)
2   **KOPELOWITZ OSTROW P.A.**
    One West Las Olas Blvd., Suite 500
3   Fort Lauderdale, Florida 33301
    Telephone: 954-525-4100
4   *cardoso@kolawyers.com*

5   M. Anderson Berry (SBN 262879)
    Gregory Haroutunian (SBN 330263)
6   **EMERY REDDY, PC**
    600 Stewart Street, Suite 1100
7   Seattle, WA 98101
    Tel: (916) 823-6955
8   *anderson@emeryreddy.com*
    *gregory@emeryreddy.com*

9   *Interim Co-Lead Counsel for Plaintiffs*
    *and the Putative Class*
10

11                **UNITED STATES DISTRICT COURT**

12              **CENTRAL DISTRICT OF CALIFORNIA**

13

14   IN RE: NORTH AMERICAN                 Master File No. 8:25-cv-00402-HDV
15   BREAKER CO. DATA SECURITY
     LITIGATION                            **PLAINTIFFS' NOTICE OF**
16                                         **MOTION AND UNOPPOSED**
     This Document Relates to: All Actions **MOTION FOR PRELIMINARILY**
17                                         **APPROVAL OF CLASS ACTION**
                                           **SETTLEMENT AND**
18                                         **MEMORANDUM IN SUPPORT**

19
                                           Date:   March 19, 2026
20                                         Time:   10:00 a.m.
21                                         Ctrm:   5B
                                           Judge: Hon. Hernan D. Vera
22

23

24

25

26

27

28

---
-i-
PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on Thursday March 19, 2026, at 10:00 a.m., or as soon thereafter as the matter may be heard by the Hon. Hernan D. Vera, Courtroom 5B, 915 East 1st Street, Los Angeles, CA 90012, Plaintiffs Alex Pilavian and Ronald Swan respectfully move for preliminary approval of a proposed Class Action settlement reached with Defendant North American Breaker Company, LLC.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on January 6, 2026, and is unopposed.

This Settlement resolves claims arising from a Data Security Incident that occurred between August 25, 2024, and August 26, 2024, where an unauthorized actor gained access to files containing sensitive information of approximately 987 of Defendant's[1] current and former employees.

The Settlement provides substantial relief for the Settlement Class, including a non-reversionary, $200,000.00 Settlement Fund and injunctive relief in the form of business practice changes to increase the protection of the Private Information of the Settlement Class ("PI") maintained by Defendant. Subject to approval, the Settlement Fund will be used to pay: court-approved service awards of $2,000.00 to each Plaintiff; Proposed Settlement Class Counsel's ("Class Counsel") attorneys' fees of no more than 25% of the Settlement Fund; Class Counsel's costs; and the Costs of Claims Administration.

As explained below, the Settlement is the product of informed, arms-length negotiations between experienced counsel and is fair, reasonable, and adequate. Accordingly, Plaintiffs respectfully request that the Court enter an order: (i) granting preliminary approval of the Settlement; (ii) certifying the Settlement Class

---

[1] All capitalized terms herein shall have the same meanings as those defined in the Settlement Agreement, attached hereto as ***Exhibit A***.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

for settlement purposes; (iii) appointing the Plaintiffs as Representative Plaintiffs and Plaintiffs' counsel as Class Counsel; (iv) approving the form of the notices and procedure for notice to the Settlement Class; (v) approving the Claim Form and the claim process; (vi) appointing CPT Group, Inc. as Claims Administrator; (vii) establishing procedures and deadlines for Settlement Class members ("Class Members") to opt-out and object; and (viii) scheduling a Final Fairness Hearing. In support, Plaintiffs submit the accompanying Memorandum of Law and Joint Declaration of Class Counsel.

DATE: February 6, 2026                 Respectfully submitted,

By: */s/ Kristen Lake Cardoso*
Kristen Lake Cardoso (SBN 338762)
**KOPELOWITZ OSTROW P.A.**
One W. Las Olas Boulevard, Suite 500
Fort Lauderdale, Florida 33301
Tel: (954) 990-2218
cardoso@kolawyers.com

M. Anderson Berry (SBN 262879)
Gregory Haroutunian (SBN 330263)
**EMERY REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Tel: (916) 823-6955
anderson@emeryreddy.com
gregory@emeryreddy.com

*Interim Co-Lead Counsel for Plaintiffs*
*and the Putative Class*

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

# <u>TABLE OF CONTENTS</u>

I.    STATEMENT OF FACTS ................................................................3

II.   PROCEDURAL HISTORY ...........................................................3

III.  SETTLEMENT TERMS ................................................................4

  A. The Settlement Class ...............................................................4

  B. The Settlement Fund ...............................................................5

  C. Class Member Benefits ...........................................................5

    1. Out-of-Pocket Expense Reimbursement.................................5

    2. Pro Rata Adjustments and Distribution of Settlement Remainder ..........5

  D. Claims Administration ............................................................6

  E. Notice of Class Members .........................................................6

  F. Opt-Outs and Objections.........................................................7

  G. Release ...................................................................................8

  H. Attorneys' Fees, Costs, and Service Awards ............................8

IV.   LEGAL STANDARD ...................................................................8

V.    ARGUMENT ...............................................................................9

  A. Preliminary Certification of the Settlement Class is Warranted..................9

  B. The Settlement Satisfies Rule 23(a)........................................10

    1. Numerosity........................................................................10

    2. Commonality.....................................................................10

    3. Typicality..........................................................................11

    4. Adequacy..........................................................................12

  C. The Settlement Satisfies Rule 23(b)(3) ...................................12

    1. Predominance....................................................................12

    2. Superiority........................................................................13

  D. The Settlement is Fair, Reasonable, and Adequate ..................13

1.  Adequate Representation ................................................................. 14

2.  Arm's Length Negotiations ............................................................. 14

3.  Adequate Relief ............................................................................. 15

    i.   Costs, Risks, and Delay .......................................................... 15

    ii.  Effectiveness .......................................................................... 15

    iii. Attorney's Fees ...................................................................... 16

    iv. Service Awards ....................................................................... 16

    v.  Other Agreements ................................................................... 17

    vi. Equitable Treatment ................................................................ 17

E.  The Settlement is Proper Under *Briseño* and Satisfies the *Bluetooth* Factors ............................................................................ 17

F.  The Settlement Satisfies the *Hanlon* Factors ................................. 18

    1.  The Strength of Plaintiffs' Case .............................................. 19

    2.  The Risks, Expense, Complexity, and Duration of Further Litigation .. 20

    3.  The Risk of Maintaining Class Certification ........................... 20

    4.  The Amount of the Settlement ................................................. 21

    5.  Investigation and Discovery ................................................... 21

    6.  The Experience and Views of Counsel .................................... 22

    7.  The Presence of a Government Participant .............................. 22

    8.  The Reaction of Class Members .............................................. 22

G.  The Court Should Approve the Notice to the Settlement Class ................. 22

H.  The Court Should Appoint Class Counsel ......................................... 24

I.  Proposed Schedule of Post-Settlement Events ................................. 24

VI.  CONCLUSION ...................................................................................... 24

# TABLE OF AUTHORITIES

**Cases**

*Acosta v. Trans Union, LLC*,
  243 F.R.D. 377 (C.D. Cal. 2007) ........................................................... 9

*Adoma v. Univ. of Phx., Inc.*,
  913 F. Supp. 2d 964 (E.D. Cal. 2012) ................................................. 15

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997) ......................................................................... 9, 12

*Amgen Inc. v. Conn Ret. Plans & Trust Funds*,
  568 U.S. 455 (2013) ............................................................................ 12

*Ballew v. Huuuge, Inc.*,
  No. CV 23-4324, 2025 U.S. Dist. LEXIS 12445 (C.D. Cal. Jan. 22, 2025) ....... 10

*Briseño v. Henderson*,
  998 F.3d 1014 (9th Cir. 2021) ..................................................... 17, 18

*Carter v. Vivendi Ticketing United States LLC*,
  No. SACV 22-01981-CJC (DFMx), 2023 U.S. Dist. LEXIS 210744
  (C.D. Cal. Oct. 30, 2023) .................................................... 17, 20, 21

*Gupta v. Aeries Software, Inc.*,
  No. SA CV 20-0995, 2023 U.S. Dist. LEXIS 36141
  (C.D. Cal. Mar. 3, 2023) ....................................... 14, 15, 16, 17, 18

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ...................................................... 9, 18, 19

*Harbour v. Cal. Health & Wellness Plan*,
  No. 5:21-cv-03322, 2024 U.S. Dist. LEXIS 7783
  (N.D. Cal. Jan. 16, 2024) .................................................... *passim*

*Hashemi v. Bosley, Inc.*,
  No. CV 21-946, 2022 U.S. Dist. LEXIS 210946
  (C.D. Cal. Nov. 21, 2022) ..................................................... 10, 18, 19

*In re 23Andme, Inc. Customer Data Sec. Breach Litig.*,
  No. 24-md-03098, 2024 U.S. Dist. LEXIS 219622
  (N.D. Cal. Dec. 4, 2024)...............................................................*passim*

*In re Cal. Pizza Kitchen Data Breach Litig.*,
  No. 8:21-cv-01928-DOC-KES, 2023 U.S. Dist. LEXIS 60272
  (C.D. Cal. Feb. 22, 2023) ........................................................10

*In re Loandepot Data Breach Litig.,*
  No. 8:24-cv-00136, 2025 U.S. Dist. LEXIS 6335
  (C.D. Cal. Jan. 13, 2025) ........................................ 10, 11, 12, 13, 14, 21

*In re Postmeds*,
  2024 U.S. Dist. LEXIS 215466 (N.D. Cal. Nov. 26, 2024) ...... 11, 12, 13, 19, 20, 23

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
  No. 16-MD-02752-LHK, 2020 U.S. Dist. LEXIS 129939
  (N.D. Cal. July 22, 2020) ........................................... 16

*Koenig v. Lime Crime, Inc.*,
  2018 U.S. Dist. LEXIS 245459 (C.D. Cal. Apr. 2, 2018) ...............................16

*La Fleur v. Med. Mgmt. Int'l,*
  No. EDCV 13-00398, 2014 U.S. Dist. LEXIS 90367
  (C.D. Cal. June 25, 2014) ...........................................8

*Medoff v. Minka Lighting, LLC*,
  2024 U.S. Dist. LEXIS 235592 (C.D. Cal. 2024) ...............................16

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) .........................................................23

*Peterson v. Vivendi Ticketing US LLC,*
  No. CV 23-7498, 2024 U.S. Dist. LEXIS 155397
  (C.D. Cal. June 20, 2024) ........................................... 9, 13, 19, 22

*Sevilla v. Aaron's, Inc.*,
  2020 U.S. Dist. LEXIS 86994, 2020 WL 10573205
  (C.D. Cal. May 15, 2020) .........................................16

*Silber v. Mabon*,
  18 F.3d 1449–54 (9th Cir. 1994) .......................................23

-vii-

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

*Spann v. J.C. Penney Corp.*,
   211 F. Supp. 3d 1244 (C.D. Cal. 2016) .................................................9

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ...........................................................................10

**Rules**

CAL RULE 11-6.2 ..................................................................................25

Federal Rule of Civil Procedure 23 ...................................................*passim*

**Statutes**

Cal. Civ. Code § 1798, et seq. ..............................................................5

Cal. Civ. Code §§ 1798.100, et seq. .......................................................3

*Manual for Complex Litigation.* § 21.632 (4th ed. 2013).........................9

**Other**

*Manual for Complex Litigation.* § 21.632 (4th ed. 2013).........................9

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

## I.    STATEMENT OF FACTS

Defendant is a wholesale distributor of electronic components. As part of its business, Defendant collected and continues to collect PI from its employees, including their names and Social Security numbers. Plaintiffs allege Defendant failed to implement adequate data security measures—which resulted in the theft of the highly sensitive PI of hundreds of individuals.

Between August 25-25, 2024, Defendant experienced a ransomware attack perpetrated by the Akira ransomware group. As a result of the Data Security Incident, cybercriminals accessed and obtained sensitive and confidential PI belonging to approximately 987 individuals, including Plaintiffs and Class Members.

On or about February 17, 2025. Defendant began sending notice letters to certain individuals, advising them that their PI may have been impacted in the Data Security Incident.

## II.    PROCEDURAL HISTORY

On March 3, 2025, Plaintiff Pilavian filed this action against Defendant relating to the Data Security Incident. *See* Class Counsel's Joint Declaration in Support of Plaintiffs' Motion for Preliminary Approval ("Joint Decl."), attached hereto as ***Exhibit B***, ¶2. On May 8, 2025, this Court ordered that another related action, filed by Plaintiff Swan, be consolidated with, and under the *Pilavian* case. *Id.* On June 6, 2025, Plaintiffs filed a Consolidated Amended Complaint ("Compl."), asserting claims against Defendant for negligence, negligence per se, breach of implied contract, violation of the California Consumer Privacy Act, Cal. Civ. Code §§ 1798.100, *et seq.*, and unjust enrichment, arising from the Data Security Incident.

From the onset of the litigation and over the course of several months, the Parties engaged in extensive, arm-length settlement negotiations. *Id.* at ¶3. The

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

negotiations were informed by Plaintiffs' active prosecution of the case, the comprehensive exchange of information between the Parties, and Class Counsel's thorough examination and evaluation of the relevant law and facts to assess the merits of the claims to be resolved in this settlement and how best to serve the interests of the Settlement Class. *Id.* at ¶4. Defendant provided Class Counsel with information related to, *inter alia*, the nature and cause of the incident, the number and location of individuals impacted by the Data Security Incident, and the specific type of information potentially accessed. *Id.* ¶5.

Based on this investigation and the negotiations described above, the Parties reached an agreement in principle to resolve all claims on a classwide basis. *Id.* ¶6. The Settlement Agreement was executed on February 6, 2026. *Id.* ¶7. The Parties did not discuss attorneys' fees and costs or potential service awards until after they reached agreement on all material Settlement terms. *Id.*

## III.   SETTLEMENT TERMS

### A.   The Settlement Class

The proposed Settlement Class is defined as:

> All persons residing in the United States whose PII was compromised in the Data Security Incident, including all who were sent a notice of the Data Security Incident.

Settlement Agreement, ¶1.30. Excluded from the Settlement Class are: (i) Defendant, the Related Entities, and their officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) any judges assigned to this case and their staff and immediate family; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Security Incident or who pleads *nolo contendere* to any such charge. *Id.*

### B.      Settlement Fund

The Settlement provides for a non-reversionary cash Settlement Fund of $200,000.00, used to pay (1) compensation to Class Members who submit Valid Claims; (2) all Costs of Claims Administration; and (3) any attorneys' fees, costs, and service awards awarded by the Court. *Id.* ¶¶1.32, 1.33.

### C.      Class Member Benefits

#### 1.      Out-of-Pocket Expense Reimbursement

Class Members who have suffered a proven monetary loss and who submit a Valid Claim using the Claim Form are eligible for up to $3,000 if: (1) the loss is an actual, documented and unreimbursed monetary loss; (2) the loss was caused by the Data Security Incident; (3) the loss occurred between August 25, 2024, and the Claims Deadline; and (4) the member of the Settlement Class made reasonable efforts to avoid, or seek reimbursement for, the loss, including but not limited to exhaustion of all available credit monitoring insurance and identity theft insurance, but was not previously reimbursed for the claimed expense or loss. *Id.* ¶

#### 2.      *Pro Rata* Adjustments and Distribution of Settlement Remainder.

If there is a Settlement Remainder, it shall be distributed as a residual *pro rata* cash payment based on shares to each Class Member who submits a Valid Claim, with each Class Member who is not a California resident receiving one (1) share of the Settlement Remainder, and each Class Member that is a California Resident receiving two total (2) shares of the Settlement Remainder. The enhanced allocation of shares for California Residents is intended to account for and resolve claims for statutory damages that may be available to California Residents under the CCPA, Cal. Civ. Code § 1798, *et seq.* as described in ¶¶1.24, 1.35 of the Agreement. In the unexpected event that the Settlement Fund is insufficient to cover the value of the Valid Claims, the Valid Claims shall be reduced *pro rata* on an equal percentage

basis as necessary to bring the cost within the Settlement Fund. *Id.* ¶2.5.

### D.    Claims Administration

The Parties agree that, subject to Court approval, CPT Group, Inc. ("CPT") shall be the Claims Administrator. CPT shall fulfill the requirements in the Preliminary Approval Order and the Agreement and comply with all applicable laws, including, *inter alia*, the Due Process Clause. *See id., generally*.

### E.    Notice to Class Members

The proposed notice forms are attached to the Agreement as Exhibits 1 and 2. The Claim Form is attached as Exhibit 3. *Id.* ¶¶1.8, 1.17, 1.36.

Within 14 days of Preliminary Approval, Defendant will provide the Class Member information, including the name and last known physical address of each Class Member, to the Claims Administrator. *Id.* ¶¶3.2(a). Within 30 days following entry of the Preliminary Approval Order, the Claims Administrator shall commence providing notice to the Settlement Class. *Id.* ¶1.18.

The Claims Administrator will send the Short Notice via U.S. Mail. *Id.* ¶3.2(c). The Claims Administrator shall perform reasonable address traces for Short Notices that are returned as undeliverable. *Id.* The Claims Administrator shall complete notice to the Settlement Class no later than 45 days after the Preliminary Approval Order is entered. *Id.*

The Long Notice will be available on the Settlement Website, along with other relevant documents. *Id.* ¶¶3.2(b). The Settlement Website will also provide an electronic option for submitting Claim Forms. *Id.* The Claims Administrator will maintain a toll-free telephone help line with live agents for Class Members to obtain more information about the Settlement. *Id.* ¶3.2(e).

**F.**    **Opt-Outs and Objections**

The procedures for opting out and objecting are detailed in plain language in the Long Notice, the Settlement Agreement, and on the Settlement Website. *Id.* ¶¶1.36, 3.1(f), 3.2(b).

Class Members may opt-out at any time before the Opt-Out Date by submitting a written request by mail to the Claims Administrator postmarked no later than the Opt-Out Date. The opt-out request must clearly manifest a Person's intent to opt-out of the Settlement Class. *Id.* ¶4.1.

Objections must be submitted to the Court only by the Objection Date the following information: (a) clearly identify the case name and number (*Pilavian v. North American Breaker Company, LLC*, Case No. 8:25-cv-00402-HDV-KES); (b) state the objector's full name, address, telephone number (if any), and email address (if any); (c) provide information identifying the objector as a Settlement Class Member; (d) include a written statement of the grounds for objection, accompanied by any legal support the objector wishes to submit; (e) state the number of times the objector has objected to a class action settlement within the past 3 years preceding the date that the objector files the objection including the case name, court, and docket number of each case in which the objector has made such an objection; (f) confirm whether the objector or a lawyer representing the objector intends to personally appear and/or testify at the Final Fairness Hearing; and (g) include the objector's signature or the signature of the objector's duly authorized lawyer or representative. Each objection must be submitted to the Court either by filing them electronically or in person at any location of the United States District Court for the Central District of California, or by mailing them to the Class Action Clerk, United States District Court for the Central District of California (Western Division) at First Street U.S. Courthouse, 350 W 1st Street, Courtroom 5B, 5th Floor, Los Angeles, CA 90012, and be filed or postmarked on or before the Opt-Out Date). All objections

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

will be scanned into the electronic case docket, and the parties will receive electronic notices of all filings. *Id.* ¶5.1.

### G.    Release

In exchange for the Class Member benefits, all Class Members will release all Released Claims against Defendant. *Id.* ¶¶1.25, 2.1, 6.

### H.    Attorneys' Fees, Costs, and Service Awards

Class Counsel shall apply to the Court for an award of attorneys' fees of up to 25% of the Settlement Fund, plus up to $20,000.00 in unreimbursed litigation costs and expenses, and service awards for the Representative Plaintiffs not to exceed $2,000.00 *Id.* ¶¶7.2-7.3. Class Counsel's request for attorneys' fees, costs, and service awards shall be filed as part of their motion for final approval, not later than 45 days before the original date set for the Final Fairness Hearing. *Id.*

The amount(s) of any award of attorneys' fees, costs, and expenses, and the service award to Plaintiffs, are intended to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement. *Id.* ¶7.5. No order of the Court, or modification or reversal or appeal of any order of the Court, concerning the amount(s) of any attorneys' fees, costs, expenses, and/or service award ordered by the Court to Class Counsel or Plaintiffs shall affect whether the Judgment is Final or constitute grounds for cancellation or termination of this Settlement Agreement. *Id.*

## IV.    LEGAL STANDARD

Approval of a class action settlement requires certification of a settlement class—which is appropriate when the settlement class satisfies Federal Rule of Civil Procedure 23(a) and one of the Rule 23(b) prongs. *La Fleur v. Med. Mgmt. Int'l*, No. EDCV 13-00398, 2014 U.S. Dist. LEXIS 90367, at *7 (C.D. Cal. June 25, 2014). Rule 23(e) "requires the Court to approve any settlement of class claims and requires reasonable direct notice to all class members who would be bound by a

proposed settlement, voluntary dismissal, or compromise." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) (quoting Fed. R. Civ. P. 23(e)) (cleaned up). The court must evaluate "whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Id.* (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003)).

## V.    ARGUMENT

"Approval of a class action settlement requires a two-step process—a preliminary approval followed by a later final approval." *Peterson v. Vivendi Ticketing US LLC*, No. CV 23-7498, 2024 U.S. Dist. LEXIS 155397, at *9 (C.D. Cal. June 20, 2024) (internal quotations omitted). At preliminary approval, the court need only "evaluate the terms of the settlement to determine whether they are within a range of possible judicial approval." *Id.* (quoting *Wright v. Linkus Enters., Inc.*, 259 F.R.D. 468, 472 (E.D. Cal. 2009)).

The proposed Settlement satisfies the standard for preliminary approval. This Settlement was the product of adversarial, arms-length, and non-collusive negotiations. Joint Decl. ¶8. "[A] presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery." *Peterson*, 2024 U.S. Dist. LEXIS 155397, at *10 (quoting *Spann*, 314 F.R.D. at 324 (C.D. Cal. 2016)). Moreover, as explained below, the Settlement satisfies Rules 23(a), 23(b)(3), 23(e), the *Bluetooth* factors, and the eight *Hanlon* factors.

### A.    Preliminary Certification of the Settlement Class is Warranted.

Before granting preliminary approval, the Court should first determine if certification is appropriate. *See Manual for Complex Litigation.*, § 21.632 (4th ed. 2013). Certification is appropriate if the proposed class, representatives, and counsel satisfy the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. *Amchem Prods. v. Windsor*, 521 U.S.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

591, 613 (1997). Under 23(b)(3), the class action must satisfy the two requirements of predominance and superiority. *Id*. at 615–16. When considering settlement-only class certification, the court need not consider trial manageability. *Id*. at 620.

Courts routinely certify data breach class actions for settlement. *See, e.g., In re Loandepot Data Breach Litig*., No. 8:24-cv-00136, 2025 U.S. Dist. LEXIS 6335, at *17 (C.D. Cal. Jan. 13, 2025); *In re 23Andme, Inc. Customer Data Sec. Breach Litig*., No. 24-md-03098, 2024 U.S. Dist. LEXIS 219622, at *14 (N.D. Cal. Dec. 4, 2024); *Harbour v. Cal. Health & Wellness Plan*, No. 5:21-cv-03322, 2024 U.S. Dist. LEXIS 7783, at *2 (N.D. Cal. Jan. 16, 2024); *In re Cal. Pizza Kitchen Data Breach Litig.*, No. 8:21-cv-01928-DOC-KES, 2023 U.S. Dist. LEXIS 60272, at *8 (C.D. Cal. Feb. 22, 2023); *Hashemi v. Bosley, Inc*., No. CV 21-946, 2022 U.S. Dist. LEXIS 210946, at *2 (C.D. Cal. Nov. 21, 2022).

### B.    The Settlement Satisfies Rule 23(a).

#### 1. Numerosity

Numerosity requires that the class must be so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). "In general, courts find the numerosity requirement satisfied when a class includes at least 40 members." *Ballew v. Huuuge, Inc*., No. CV 23-4324, 2025 U.S. Dist. LEXIS 12445, at *19 (C.D. Cal. Jan. 22, 2025) (quoting *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010)). The putative class includes approximately 987 individuals. Thus, numerosity is satisfied.

#### 2. Commonality

Commonality requires questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). This requires that class members "suffered the same injury" such "that all their claims can productively be litigated at once." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The determination of common questions must

"resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. Even a single common question is sufficient. *Id*. at 359.Commonality

is satisfied because Plaintiffs and Class Members share common questions of law and fact arising from the same common event (i.e., the Data Security Incident). Agreement at 1-2. Additionally, Plaintiffs alleged numerous common questions of law and fact—including "[w]hether Defendant had a duty to implement and maintain reasonable security procedures and practices to protect and secure Plaintiffs' and Class Members' PII from unauthorized access and disclosure," "[w]hether Defendant failed to exercise reasonable care to secure and safeguard Plaintiffs' and Class Members' PII," and "[w]hether Plaintiffs and Class Members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust." Compl. ¶84.

Such allegations are sufficient to satisfy commonality. *See, e.g., In re 23Andme, Inc. Customer Data Sec. Breach Litig*., 2024 U.S. Dist. LEXIS 219622, at *47 (finding that "[c]ommon questions exist because the [class members] were subject to the same data breach; plus, there are common questions related to the breach such as whether [defendant] could have had better security policies to protect [class member] information"); *see also In re Loandepot*, 2025 U.S. Dist. LEXIS 6335, at *7; *In re Postmeds*, 2024 U.S. Dist. LEXIS 215466, at *11–12 (N.D. Cal. Nov. 26, 2024).

### 3. Typicality

Typicality requires the claims or defenses of the class representative to be typical of the class. Fed. R. Civ. P. 23(a)(3). Typicality is satisfied because the claims and defenses of Plaintiffs mirror the claims and defenses of the Settlement Class. Agreement at 1-2. Such similarities are sufficient to satisfy typicality. *See, e.g., In re Loandepot*, 2025 U.S. Dist. LEXIS 6335, at *7 (finding typicality satisfied in a data breach class action); *In re 23Andme*, 2024 U.S. Dist. LEXIS

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

219622, at *47 ("Plaintiffs' claims are typical of the class claims because they were subject to the same data breach[.]").

### 4. Adequacy

Adequacy requires the class representative to fairly and adequately protect the class's interests. Fed. R. Civ. P. 23(a)(4). This requirement "serves to uncover conflicts of interest between named Parties and the class they seek to represent." *Amchem*, 521 U.S. at 625. Here, adequacy is satisfied because the interests of Plaintiffs and the Settlement Class align (i.e., to secure relief from the harms arising from the Data Security Incident). *See* Joint Decl. ¶9. There are no conflicts of interests between the Plaintiffs and the Settlement Class. *Id.* ¶10. Moreover, Plaintiffs retained qualified counsel with substantial experience in complex litigation and data breach class actions. *Id.* ¶¶11, 13. Thus, the Settlement satisfies adequacy. *See, e.g., In re Loandepot*, 2025 U.S. Dist. LEXIS 6335, at *7 (finding adequacy satisfied in a data breach class action); *In re 23Andme*, 2024 U.S. Dist. LEXIS 219622, at *47 (finding adequacy satisfied because "there are no apparent conflicts"); *In re Postmeds*, 2024 U.S. Dist. LEXIS 215466, at *13–14 (same).

## C. The Settlement Satisfies Rule 23(b)(3).

### 1. Predominance

Predominance requires questions of law or fact common to class members to predominate over any questions affecting only individual members. Fed. R. Civ. P. 23(b)(3). Predominance "does not require" a plaintiff seeking class certification to "show that the elements of [their] claim are susceptible to classwide proof." *Amgen Inc.*, 568 U.S. at 468–69. Rather, predominance merely requires "that common questions *predominate* over any questions affecting only individual [class] members." *Id.* (quoting Fed. R. Civ. P. 23(b)(3)) (cleaned up); *see also In re 23Andme*, 2024 U.S. Dist. LEXIS 219622, at *48–49 ("Admittedly, there may be some variation in class members' individual injuries, specifically, regarding

damages; but even assuming such, that in and of itself does not negate predominance given the centrality of the common questions identified above to the resolution of the case.").

Here, predominance is satisfied because Plaintiffs and Class Members share common questions of law and fact arising from the same common event (i.e., the Data Security Incident that occurred in August 2024). Agreement at 1-2. Plaintiffs alleged numerous questions of law and fact that are common to the entire Settlement Class and susceptible to common evidence. Moreover, any individualized questions are minor compared to the voluminous common questions. Such commonalities are sufficient to satisfy predominance. *See, e.g., In re Loandepot*, 2025 U.S. Dist. LEXIS 6335, at *7 (finding commonality satisfied in a data breach class action); *In re 23Andme*, 2024 U.S. Dist. LEXIS 219622, at *48; *In re Postmeds*, 2024 U.S. Dist. LEXIS 215466, at *14–15; *Peterson*, 2024 U.S. Dist. LEXIS 155397, at *21.

## 2. Superiority

Superiority requires that the class action must be superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). Superiority is readily satisfied in data breach cases. *See, e.g., In re Loandepot*, 2025 U.S. Dist. LEXIS 6335, at *7 (finding superiority satisfied in a data breach class action); *In re 23Andme*, 2024 U.S. Dist. LEXIS 219622, at *50 (same). For example, in the data breach case *In re Postmeds*, the court held that superiority was satisfied because the "judicial economy achieved through common adjudication makes class action a superior method for adjudicating the proposed class's claims." 2024 U.S. Dist. LEXIS 215466, at *16. Here, superiority is also satisfied because class-wide adjudication improves judicial economy.

## D. The Settlement is Fair, Reasonable, and Adequate.

Under Fed. R. Civ. P. 23(e), the court may approve a class action settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate."

*In re 23Andme*, 2024 U.S. Dist. LEXIS 219622, at *50 (quoting Fed. R. Civ. P. 23(e)). In recent years, "Congress amended Rule 23(e)(2) to provide specific factors for a district court to consider in determining whether a settlement is 'fair, reasonable, and adequate.'" *Id.* (quoting *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 607 (9th Cir. 2021)). The factors are whether "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." *Id.* (quoting Fed. R. Civ. P. 23(e)(2)).

### 1. Adequate Representation

As detailed above, Class Counsel provided adequate representation—as evidenced by the Settlement, which provides timely and tailored relief to Plaintiffs and Class Members. *See* Joint Decl. ¶12. Moreover, Class Counsel has substantial experience in complex litigation and data breach class actions. *Id.* ¶¶11, 13. Thus, this factor weighs toward preliminary approval. *See, e.g., In re Loandepot*, 2025 U.S. Dist. LEXIS 6335, at *7 (finding adequacy satisfied); *In re 23Andme*, 2024 U.S. Dist. LEXIS 219622, at *47 (same); *see also Gupta v. Aeries Software, Inc.*, No. SA CV 20-0995, 2023 U.S. Dist. LEXIS 36141, at *12 (C.D. Cal. Mar. 3, 2023) (finding this factor weighed toward approval when counsel "had a sound basis for measuring the terms of the settlement").

### 2. Arm's Length Negotiations

The Settlement was the product of arm's length negotiations. *See* Joint Decl. ¶3, 8. Additionally, the Settlement was secured only after the Parties exchanged

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

informal discovery—which enabled the Parties to better evaluate their respective claims and defenses. *Id*. ¶15. Such facts are significant because settlements are presumed fair if they "follow sufficient discovery and genuine arms-length negotiation." *Adoma v. Univ. of Phx., Inc*., 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 528 (C.D. Cal. 2004)); *see also Gupta*, 2023 U.S. Dist. LEXIS 36141, at *11 (holding that this factor weighed toward approval when the "settlement was reached as a result of intensive, arm's-length negotiations"). Thus, this factor supports approval.

### 3. Adequate Relief

#### i. Costs, Risks, and Delay

The Settlement provides adequate relief—especially in light of the costs, risks, and delays posed by protracted litigation. Joint Decl. ¶16. For example, in the data breach case *Gupta*, the court held that this factor supported approval because "even putting aside defendant's defenses, and assuming class certification were granted and upheld on appeal, defeating summary judgment, winning the case at trial, and then sustaining the final judgment on appeal would be extremely difficult." 2023 U.S. Dist. LEXIS 36141, at *13. Therein, the court reasoned that "it is significant that class members will receive a monetary recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Id*. (quoting *Nat'l Rural Telecomms. Coop*., 221 F.R.D. at 526 (C.D. Cal. 2004)) (cleaned up). Here, this factor supports approval because the Settlement guarantees relief—as opposed to the mere possibility of relief in the future. Joint Decl. ¶17.

#### ii. Effectiveness

The Settlement is effective because the relief provided is tailored to the specific injuries of Class Members (i.e., the Settlement will allocate funds according

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

to the out-of-pocket losses suffered by Class Members). Agreement, ¶2; Joint Decl. ¶18. Thus, this factor weighs toward approval. *Gupta*, 2023 U.S. Dist. LEXIS 36141, at *14 (C.D. Cal.) (holding that "this factor weighs in favor of approval" when "class members were required to submit claim forms to obtain monetary relief").

### iii.    Attorneys' Fees

"California has recognized that most fee awards based on either a lodestar or percentage calculation are 33 percent and has endorsed the federal benchmark of 25 percent." *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1262 (C.D. Cal. 2016) (citations omitted). It is "not uncommon for courts to award one-third of the gross settlement fund as attorneys' fees where the circumstances warrant it." *Sevilla v. Aaron's, Inc.*, 2020 U.S. Dist. LEXIS 86994, 2020 WL 10573205, at *2 (C.D. Cal. May 15, 2020).

The Settlement is adequate insofar as Plaintiffs seek up to 25% of the Settlement Fund as attorney fees, plus unreimbursed litigation costs and expenses up to $20,000.00. Agreement, ¶7.2. This supports approval because courts in this District have approved attorneys' fees *above* the 25% benchmark in similar data breach cases. *See, e.g., Medoff v. Minka Lighting, LLC*, 2024 U.S. Dist. LEXIS 235592, at *2 (C.D. Cal. 2024) (approving award of one-third of the settlement fund in data breach case); *see also Koenig v. Lime Crime, Inc.*, 2018 U.S. Dist. LEXIS 245459, at *11 (C.D. Cal. Apr. 2, 2018) (approving award of 38% of the common fund in data breach case). Plaintiffs' request for attorneys' fees at the 25% benchmark is, thus, reasonable.

### iv.    Service Awards

The Service Awards in the amount of $2,000.00 for each Representative Plaintiff are reasonable and consistent with awards in similar cases. *See In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 U.S.

Dist. LEXIS 129939, at *33 (N.D. Cal. July 22, 2020), aff'd, No. 20-16633, 2022 U.S. App. LEXIS 17680 (9th Cir. June 27, 2022) (approving $2,500 to $7,500 awards in data breach cases). Plaintiffs have actively participated in this litigation from its inception, providing valuable information to Class Counsel, reviewing and approving pleadings, and dedicating themselves to pursuing litigation on behalf of the Settlement Class. Joint Decl. ¶19.

### v.  Other Agreements

Here, this factor is inapplicable because there are no "agreements required to be identified under Rule 23(e)(3)." *See, e.g., Gupta*, 2023 U.S. Dist. LEXIS 36141, at *16 (C.D. Cal.); *Carter v. Vivendi Ticketing United States LLC*, No. SACV 22-01981-CJC (DFMx), 2023 U.S. Dist. LEXIS 210744, at *27 (C.D. Cal. Oct. 30, 2023); Joint Decl. ¶20.

### 4.  Equitable Treatment

The Settlement provides equitable treatment, as Class Members may claim relief according to the specific harms suffered. Agreement, ¶2; Joint Decl. ¶21. Thus, this factor also weighs towards approval. *See, e.g., In re 23Andme*, 2024 U.S. Dist. LEXIS 219622, at *68 (finding that a settlement provided equitable treatment when monetary relief was allocated according to the injuries suffered); *Carter*, 2023 U.S. Dist. LEXIS 210744, at *34 (holding that "the Settlement treats class members equitably" when "[c]lass members may receive differing payouts under the Settlement depending on what documentation they have of their ordinary and extraordinary costs"). In sum, the Settlement is fair, reasonable, and adequate under Fed. R. Civ. P. 23(e).

### E.  The Settlement Is Proper Under *Briseño* and Satisfies the *Bluetooth* Factors.

In the Ninth Circuit, class action settlements are often reviewed for the "three red flags" delineated by *Briseño v. Henderson*, 998 F.3d 1014, 1026 (9th Cir. 2021).

These "three red flags" are also called the "*Bluetooth*" factors. *Id.* The three factors are: "(i) if class counsel receives a disproportionate distribution of the gross settlement amount; (ii) if any of the gross settlement amount reverts to the defendant; and (iii) if there is a 'clear sailing arrangement.'" *Hashemi*, 2022 U.S. Dist. LEXIS 210946, at *17. None of the red flags are present here. First, Class Counsel will request up to 25% of the Settlement Fund, which is the benchmark for fee awards accepted by courts. Joint Decl. ¶22. Second, the Settlement Fund is *non-reversionary* such that no amount of the Settlement will revert to Defendant. *See* Agreement, ¶2.5. Third, the Settlement Agreement does not contain a clear sailing provision. *See id., generally*.

Thus, the Settlement is proper under *Briseño*, and the Court should grant preliminary approval. *See, e.g., Hashemi*, 2022 U.S. Dist. LEXIS 210946, at *22 ("After considering each of the *Briseño* factors, the Court finds that the Settlement Agreement, on balance, was not collusive or based on inappropriate self-interest."); *Gupta*, 2023 U.S. Dist. LEXIS 36141, at *15–16 (holding that "although the Settlement Agreement includes an implicit clear sailing provision . . . any fees not awarded will not revert to defendant; instead, fees will be added to the net settlement fund, from which payments to class members will be made . . . [t]hus, there is no issue").

## F.    The Settlement Satisfies the *Hanlon* Factors.

At preliminary approval, courts in the Ninth Circuit consider the eight factors provided by *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).[2] Specifically, "[i]n determining whether a settlement is fair, reasonable, and adequate, courts must balance a number of factors: [1] the strength of the plaintiffs'

---

[2] The *Hanlon* factors are occasionally called the "*Staton*" factors" or the "*Churchill* factors." *See Briseño*, 998 F.3d at 1023 (discussing the "*Hanlon/Staton* factors"); *Harbour*, 2024 U.S. Dist. LEXIS 7783, at *12 (discussing the "*Churchill* factors").

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

case; [2] the risk, expense, complexity and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed and the stage of proceedings; [6] the experience and views of counsel; [7] the presence of a government participant; and [8] the reaction of the class members to the proposed settlement." *Hashemi*, 2022 U.S. Dist. LEXIS 210946, at *6 (quoting *Hanlon*, 150 F.3d at 1026). As detailed below, the *Hanlon* factors support preliminary approval because two factors are inapplicable and the other six weigh toward preliminary approval.

### 1. The Strength of Plaintiffs' Case.

In the data breach context, evaluating the strength of a case is difficult because "there have been no data breach cases tried to verdict, and only a handful of cases have achieved class certification." *In re Postmeds*, 2024 U.S. Dist. LEXIS 215466, at *23. Indeed, in *In re Postmeds*, the court approved a $7.5 million common fund settlement—even when the estimated full recovery was approximately $50 million. *Id.* at *24. Similarly, in *In re 23Andme*, the court approved a $30 million common fund settlement when the potential recovery was "almost $50 billion in damages . . . if the class were to completely prevail at trial[.]" 2024 U.S. Dist. LEXIS 219622, at *54.

Here, the strength of Plaintiffs' case is uncertain. Joint Decl. ¶23; *Peterson*, 2024 U.S. Dist. LEXIS 155397, at *14 (C.D. Cal.) (noting that "if litigation were to proceed, there is a fair possibility that Plaintiffs and/or the Settlement Class do not prevail"). After all, [w]ithout a compromise, there [is] little guarantee of any benefit to the Settlement Class without a substantial amount of further litigation." *Harbour*, 2024 U.S. Dist. LEXIS 7783, at *13. As such, "[t]his factor weighs strongly in favor of the settlement." *Id*.

## 2. The Risks, Expense, Complexity, and Duration of Further Litigation.

In data breach cases, protracted litigation poses substantial risks—especially in terms of establishing liability and damages. *In re 23Andme*, 2024 U.S. Dist. LEXIS 219622, at *55 (explaining that "on liability for the negligence-based claims, [defendant] could argue contributory negligence if a [class member] recycled login credentials or failed to use a unique password" and that "if the class asserts that [class members] suffered losses as a result of the data breach, quantifying those losses—which could be both economic and noneconomic—could be difficult" and that "variation in individual injuries suffered and potential damages claimable, while not necessarily preclusive of certification under Rule 23(b)(3) as noted above, poses challenges"); *see also Harbour*, 2024 U.S. Dist. LEXIS 7783, at *13 (noting that "this factor favors the settlement" because the "data breach injury asserted is legally unproven, technically complex, and potentially of little value").

Class litigation poses substantial risks of "denial or reversal of class certification . . . losing on summary judgment or at a jury trial . . . [or] revers[al] on appeal" which would "effectively extinguish any hope of recovery by the Settlement Class." *In re Postmeds*, 2024 U.S. Dist. LEXIS 215466, at *24; *see also Carter*, 2023 U.S. Dist. LEXIS 210744, at *16 ("Even if Plaintiffs could secure a better result than the Settlement represents at trial, any result obtained then would take significantly longer and there is a risk that Plaintiffs could have received much less, or nothing at all."). These risks are likewise present here—and this factor weighs toward approval. Joint Decl. ¶24.

## 3. The Risk of Maintaining Class Certification.

Without this Settlement, Plaintiffs would eventually face the risks of obtaining (and then maintaining) class certification. Joint Decl. ¶25. "Historically,

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

data breach cases have experienced minimal success in moving for class certification." *Carter*, 2023 U.S. Dist. LEXIS 210744, at *16–17 (quoting *Gaston v. Fabfitfun, Inc.*, No. 2:20-cv-09534, 2021 U.S. Dist. LEXIS 250695, at *6 (C.D. Cal. Dec. 9, 2021)). These risks support approval because "the notion that a district court could decertify a class at any time is an inescapable and weighty risk that weighs in favor of a settlement." *Harbour*, 2024 U.S. Dist. LEXIS 7783, at *13.

### 4. The Amount of the Settlement.

The Settlement provides $200,000.00 for a class of 987 ($202.63 per Class Member). Agreement, ¶¶1.31, 1.32; Joint Decl. ¶26. This strongly weighs toward approval because "other courts have approved settlements in privacy and security cases when each class member received just a few dollars or less." *Carter*, 2023 U.S. Dist. LEXIS 210744, at *13. Indeed, this Settlement provides more value per Class Member than analogous data breach settlements. *See, e.g., In re Loandepot Data Breach Litig.*, No. 8:24-cv-00136, 2025 U.S. Dist. LEXIS 6335, at *4 (C.D. Cal. Jan. 13, 2025) ($25 million common fund for a class of 16,924,007 ($1.48 per class member)); *In re 23Andme*, 2024 U.S. Dist. LEXIS 219622, at *23 ($30 million common fund for a class of approximately 6.4 million ($4.69 per class member)); *Harbour*, 2024 U.S. Dist. LEXIS 7783, at *10, 14 ($10 million common fund for a class of approximately 1.4 million ($7.14 per class member)).

### 5. Investigation and Discovery.

This Settlement is the product of robust informal confirmatory discovery—which enabled the Parties to better evaluate the strengths and weaknesses of their respective claims and defenses. Joint Decl. ¶¶5, 15. In particular, Defendant provided information to Plaintiffs including: the nature and cause of the incident, the number and location of individuals impacted by the Data Security Incident, and the specific type of information potentially accessed. *Id.* ¶5. This information is significant because "[f]ormal discovery is not necessary where the parties have

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL

sufficient information to make an informed decision about the settlement." *Peterson*, 2024 U.S. Dist. LEXIS 155397, at *11 (quoting *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1239 (9th Cir. 1998)) (cleaned up). Thus, this factor weighs toward preliminary approval.

### 6. The Experience and Views of Counsel.

Here, Class Counsel has substantial experience in complex litigation and data breach class actions. Joint Decl. ¶¶13, 27. Based on this experience, Class Counsel believes that this Settlement is fair, reasonable, adequate, and in the best interests of Class Members. *Id.* ¶28. Such a recommendation is significant because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation" and "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Harbour*, 2024 U.S. Dist. LEXIS 7783, at *15 (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009); *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2009)). Thus, this factor weighs toward preliminary approval.

### 7. The Presence of a Government Participant.

This factor is inapplicable because the Settlement does not involve any government participant. *See* Agreement, *generally*.

### 8. The Reaction of Class Members.

This factor is inapplicable—at this stage in the case—because Class Members have not yet had an opportunity to voice their opinions about the Settlement. Thus, this factor does not weigh toward (or against) approval.

### G.    The Court Should Approve the Notice to the Settlement Class.

The Court should approve the notice to the Settlement Class because it directs "notice in a reasonable manner" as required by Rule 23. Fed. R. Civ. P. 23(e)(1)(B). Here, Class Members are entitled to the "best notice that is practicable under the

circumstances" of any proposed settlement before it is finally approved by the Court. Fed. R. Civ. P. 23(c)(2)(B). Notice may occur by "United States mail, electronic means, or other appropriate means." *Id*. Notice must explain: (i) the action; (ii) how the class is defined; (iii) the class claims, issues, or defenses; (iv) that a class member may appear through an attorney; (v) that the court will exclude from the class any member who requests it; (vi) the time and manner for requesting exclusion; and (vii) the binding effect that class judgment has on members. *Id*. As such, due process requires that notice be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Id*. The best practicable notice is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950); *see also Silber v. Mabon*, 18 F.3d 1449, 1453–54 (9th Cir. 1994) (noting that the court need not ensure all class members receive actual notice, only that "best practicable notice" is given).

Here, the proposed notice satisfies due process. The Parties agree the Notice Commencement Date shall be 30 days following entry of the Preliminary Approval Order. Agreement, ¶¶1.18, 3.3. Among other things, the notice shall include a description of the material terms of this Settlement; how to submit a Claim Form; the Claims Deadline; Opt-Out Date; Objection Date; Final Fairness Hearing date; and the Settlement Website address at which Class Members may access the Agreement and other related documents and information. Agreement, ¶¶1.17, 1.34, 1.36, 3.2(b), 3.2(c). Both the Short Notice and Long Notice provide all the information required by Fed. R. Civ. P. 23(c)(2)(B). Thus, the notice satisfies—and even exceeds—that which is required by due process. *In re Postmeds*, 2024 U.S. Dist. LEXIS 215466, at *26 (approving a similar notice plan).

### H.      The Court Should Appoint Class Counsel.

When certifying a class, Rule 23 requires a court to appoint class counsel that will fairly and adequately represent the class members. Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court considers counsel's work in identifying or investigating potential claims; experience in handling class actions or other complex litigation and the types of claims asserted in the case; knowledge of the applicable law; and resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A) (i–iv). Class Counsel meets these requirements. *See* Joint Decl. ¶13. Thus, the Court should appoint Kristen Lake Cardoso and M. Anderson Berry of Emery Reddy, PC as Class Counsel under Rule 23(g).

### I.      Proposed Schedule of Post-Settlement Events

Plaintiffs respectfully propose the schedule of post-settlement events set forth in the proposed Preliminary Approval Order (Exhibit D of the Agreement) for the Court's review and approval. If approved, Plaintiffs request the Court schedule the Final Fairness Hearing for the week of March 30, 2026, or such later date available on the Court's calendar.

## VI.   CONCLUSION

Plaintiffs respectfully request the entry of an Order: (i) granting preliminary approval of the Settlement; (ii) provisionally certifying the Settlement Class for settlement purposes; (iii) appointing Plaintiffs as Representative Plaintiffs and Plaintiffs' counsel as Class Counsel; (iv) approving the notice plan and materials; (v) approving the Claim Form and the claim process; (vi) appointing CPT Group, Inc. as the Claims Administrator; (vii) establishing opt-out and objection procedures; and (viii) scheduling a Final Fairness Hearing at which time the Court will consider final approval of the Settlement, class certification, and Class Counsel's request for attorneys' fees, costs, and service awards.

DATE: February 6, 2026

Respectfully submitted,

By: */s/ Kristen Lake Cardoso*
Kristen Lake Cardoso (SBN 338762)
**KOPELOWITZ OSTROW P.A.**
One W. Las Olas Boulevard, Suite 500
Fort Lauderdale, Florida 33301
Tel: (954) 990-2218
cardoso@kolawyers.com

M. Anderson Berry (SBN 262879)
Gregory Haroutunian (SBN 330263)
**EMERY REDDY, PC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Tel: (916) 823-6955
anderson@emeryreddy.com
gregory@emeryreddy.com

*Interim Co-Lead Counsel for Plaintiffs
and the Putative Class*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6.2

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 6,877 words, which complies with the word limit of L.R. 11-6.1.

By: */s/ Kristen Lake Cardoso*
Kristen Lake Cardoso

## CERTIFICATE OF SERVICE

I hereby certify that on February 6, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

By: */s/ Kristen Lake Cardoso*
Kristen Lake Cardoso

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL