M. Anderson Berry (SBN 262879)
Gregory Haroutunian (SBN 330263)
**EMERY REDDY, PC**
333 University Ave., Suite 200
Sacramento, CA 95825
Tel: (916) 823-6955
*anderson@emeryreddy.com*
*gregory@emeryreddy.com*

Kristen Lake Cardoso (SBN 338762)
**KOPELOWITZ OSTROW P.A.**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Telephone: 954-525-4100
*cardoso@kolawyers.com*

*Interim Co-Lead Counsel for Plaintiffs and the Putative Class*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: NORTH AMERICAN BREAKER CO. DATA SECURITY LITIGATION<br><br>This Document Relates to: All Actions | Master File No. 8:25-cv-00402-HDV<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT**<br><br>Date: September 24, 2026<br>Time: 10:00 a.m.<br>Ctrm: 5B<br>Judge: Hon. Hernan D. Vera |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on Tuesday September 22, 2026, at 10:00 a.m., or as soon thereafter as the matter may be heard by the Hon. Hernan D. Vera, Courtroom 5B, 915 East 1st Street, Los Angeles, CA 90012, Plaintiffs Alex Pilavian and Ronald Swan respectfully move for final approval of a proposed Class Action settlement reached with Defendant North

American Breaker Company, LLC ("Settlement").

This Settlement resolves claims arising from a Data Security Incident that occurred between August 25, 2024, and August 26, 2024, where an unauthorized actor gained access to files containing sensitive personally identifying information ("PII") of approximately 987 of Defendant's[1] current and former employees.

The Settlement provides substantial relief for the Settlement Class, including a non-reversionary, $200,000.00 Settlement Fund and injunctive relief in the form of business practice changes to increase the protection of the PII of the Settlement Class maintained by Defendant. Subject to approval, the Settlement Fund will be used to pay: (1) compensation to Settlement Class Members ("Class Members") who submit Valid Claims; (2) all Costs of Claims Administration; and (3) any attorneys' fees, costs, and service awards awarded by the Court.

As explained below, the Settlement is the product of informed, arms-length negotiations between experienced counsel and is fair, reasonable, and adequate. Accordingly, Plaintiffs respectfully request that the Court (i) enter an order granting this motion and Plaintiff's Unopposed Motion for Attorney's Fees, Expenses, and Service Awards to Plaintiffs and (ii) enter a final judgment dismissing this case.

DATE: September 8, 2026

Respectfully submitted,

By: */s/ M. Anderson Berry*
M. Anderson Berry (SBN 262879)
Gregory Haroutunian (SBN 330263)
**EMERY REDDY, PC**
333 University Ave, Suite 200
Sacramento, CA 95825
Tel: (916) 823-6955
*anderson@emeryreddy.com*
*gregory@emeryreddy.com*

Kristen Lake Cardoso (SBN 338762)
**KOPELOWITZ OSTROW P.A.**
One W. Las Olas Boulevard, Suite 500

[1] All capitalized terms herein shall have the same meanings as those defined in the Settlement Agreement, attached to Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 41) as Exhibit A.

Fort Lauderdale, Florida 33301
Tel: (954) 990-2218
*cardoso@kolawyers.com*

*Interim Co-Lead Counsel for Plaintiffs and the Putative Class*

**TABLE OF CONTENTS**

**PAGE**


I. STATEMENT OF FACTS .......... 9

II. PROCEDURAL HISTORY .......... 9

III. SETTLEMENT TERMS .......... 10

A. The Settlement Class .......... 10

B. Settlement Fund .......... 10

C. Class Member Benefits .......... 10

1. Out-of-Pocket Expense Reimbursement .......... 10

2. *Pro Rata* Adjustments and Distribution of Settlement Remainder. .......... 11

D. Preliminary Approval, Notice, Objections and Exclusions, and Approved .......... 11

Claims .......... 11

a. Preliminary Approval. .......... 11

b. Notice. .......... 11

c. Objections and Exclusions. .......... 12

d. Approved Claims. .......... 12

IV. ARGUMENT .......... 14

A. The Settlement is Fair, Reasonable, and Adequate. .......... 14

1. Adequate Representation .......... 15

2. Arm's Length Negotiations .......... 15

3. Adequate Relief .......... 16

i. Costs, Risks, and Delay .......... 16

ii. Effectiveness .......... 16

iii. Attorneys' Fees .......... 16

iv. Service Awards .......... 17

v. Other Agreements .......... 17

4. Equitable Treatment .......... 17

B. The Settlement Is Proper Under *Briseño* and Satisfies the *Bluetooth* Factors. .......... 18

C. The Settlement Satisfies the *Hanlon* Factors. .......... 18

1. The Strength of Plaintiffs' Case. .......... 19

2. The Risks, Expense, Complexity, and Duration of Further Litigation. .......... 20

3. The Risk of Maintaining Class Certification. .......... 20

4. The Amount of the Settlement. .......... 21

5. Investigation and Discovery. ........................................................................ 21
6. The Experience and Views of Counsel. ............................................................ 22
7. The Presence of a Government Participant. ..................................................... 22
8. The Reaction of Class Members. ..................................................................... 22
V. CONCLUSION ........................................................................................................ 22

## TABLE OF AUTHORITIES

**CASES** **PAGE**

*Adoma v. Univ. of Phx., Inc.*
913 F. Supp. 2d 964 (E.D. Cal. 2012)........................................................................ 15

*Briseño v. Henderson*
998 F.3d 1014 (9th Cir. 2021) ........................................................................*passim*

*Carter v. Vivendi Ticketing US LLC*
No. SACV2201981CJCDFMX, 2023 WL 8153712 (C.D. Cal. Oct. 30, 2023)..............*passim*

*Gaston v. Fabfitfun, Inc.*
No. 2:20-cv-09534-RGK-E, 2021 U.S. Dist. LEXIS 250695 (C.D. Cal. Dec. 9, 2021) ... 20, 21

*Gupta v. Aeries Software, Inc.*
No. SA CV 20-0995 FMO (ADSx), 2023 U.S. Dist. LEXIS 36141 (C.D. Cal. Mar. 3, 2023) ........................................................................*passim*

*Guy v. Convergent Outsourcing, Inc.*
No. C22-1558 MJP, 2023 WL 8778166 (W.D. Wash. Dec. 19, 2023) ................................. 13

*Hanlon v. Chrysler Corp.*
150 F.3d 1011 (9th Cir. 1998) ........................................................................ 19

*Harbour v. California Health & Wellness Plan*
No. 5:21-CV-03322-EJD, 2024 WL 171192 (N.D. Cal. Jan. 16, 2024)..........................*passim*

*Hashemi v. Bosley, Inc.*
No. CV 21-946 psg (RAOx), 2022 U.S. Dist. LEXIS 210946 (C.D. Cal. Nov. 21, 2022)........................................................................ 18

*Fox v. Iowa Health Sys.*
No. 3:18-cv-00327-JDP, 2021 WL 826741 (W.D. Wis. March 4, 2021).............................. 14

*In re 23Andme*
No. 24-md-03098-EMC, 2024 U.S. Dist. LEXIS 219622 (N.D. Cal. Dec. 4, 2024) .......*passim*

*In re Forefront Data Breach Litig.*

**CASES** **PAGE**

No. 1:21-cv-0887-LA, 2023 WL 6215366 (E.D. Wis. March 22, 2023) .................................... 14

*In re Loandepot Data Breach Litig.*
No. 8:24-cv-00136-DOC-JDEx, 2025 U.S. Dist. LEXIS 6335
(C.D. Cal. Jan. 13, 2025) .................................................................................... *passim*

*In Re PostMeds, Inc. Data Breach Litig.*
No. 23-CV-05710-HSG, 2024 WL 4894293 (N.D. Cal. Nov. 26, 2024) ......................... *passim*

*In re Solara Medical Supplies Data Breach Litigation*
No. 3:19-CV-2284-H-KSC, 2022 WL 1174102 (S.D. Cal. May 7, 2020) .............................. 13

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*
No. 16-MD-02752-LHK, 2020 U.S. Dist. LEXIS 129939 (N.D. Cal. July 22, 2020) ............ 17

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*
No. 20-16633, 2022 U.S. App. LEXIS 17680 (9th Cir. June 27, 2022)……………………17

*Koenig v. Lime Crime, Inc.*
No. CV 16-503 PSG (JEMx), 2018 U.S. Dist. LEXIS 245459 (C.D. Cal. Apr. 2, 2018) ....... 17

*Linney v. Cellular Alaska Partnership*
151 F.3d 1234 (9th Cir. 1998) ............................................................................. 21

*McKinney-Drobnis v. Oreshack*
16 F.4th 594 (9th Cir. 2021) ............................................................................ *passim*

*Medoff v. Minka Lighting, LLC*
No. 2:22-cv-08885-HDV, 2024 U.S. Dist. LEXIS 235592 (C.D. Cal. 2024) ......................... 17

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*
221 F.R.D. 523 (C.D. Cal. 2004) ...................................................................... 15, 16

*Peterson v. Vivendi Ticketing US LLC*
No. CV 23-7498-MWF (DFMX), 2024 WL 3915154 (C.D. Cal. June 20, 2024) ........... *passim*

*Peterson v. Vivendi Ticketing US LLC*
No. CV 23-7498-MWF (DFMX), 2024 U.S. Dist. LEXIS 155397 (C.D. Cal.) ............... *passim*

**CASES** **PAGE**

*Pfeiffer v. RadNet, Inc.*
No. 220CV09553RGKSK, 2021 WL 8893644 (C.D. Cal. Aug. 18, 2021)............................ 13

*Rodriguez v. W. Publ'g Corp.*
563 F.3d 948 (9th Cir. 2009) ........................................................................................ 22

*In re Omnivision Techs*
559 F. Supp. 2d 1036 (N.D. Cal. 2008)............................................................................ 22

*Sevilla v. Aaron's, Inc.*
No. CV 17-4053- DMG (Ex), 2020 U.S. Dist. LEXIS 86994 (C.D. Cal. May 15, 2020)....... 17

*Sevilla v. Aaron's, Inc.*
No. CV 17-4053- DMG (Ex)2020 WL 10573205 (C.D. Cal. May 15, 2020)………………..17

*Spann v. J.C. Penney Corp.*
211 F. Supp. 3d 1244 (C.D. Cal. 2016) ........................................................................ 16

**STATUTES** **PAGE**

Cal. Civ. Code § 1798...................................................................................................... 11
Cal. Civ. Code §§ 1798.100................................................................................................ 9

**RULES** **PAGE**

Rule 23(a)........................................................................................................................ 14
Fed. R. Civ. P. 23(e) ..................................................................................................*passim*
Fed. R. Civ. P. 23(e)(2)............................................................................................. 14, 15
Fed. R. Civ. P. 23(e)(3)……………………………………………………………..*passim*

## I. STATEMENT OF FACTS

Defendant is a wholesale distributor of electronic components. As part of its business, Defendant collected and continues to collect PII from its employees, including their names and Social Security numbers. Plaintiffs allege Defendant failed to implement adequate data security measures—which resulted in the theft of the highly sensitive PII of hundreds of individuals.

Between August 25-25, 2024, Defendant experienced a ransomware attack perpetrated by the Akira ransomware group. As a result of the Data Security Incident, cybercriminals accessed and obtained sensitive and confidential PII belonging to approximately 987 individuals, including Plaintiffs and Class Members.

On or about February 17, 2025. Defendant began sending notice letters to certain individuals, advising them that their PII may have been impacted in the Data Security Incident.

## II. PROCEDURAL HISTORY

On March 3, 2025, Plaintiff Pilavian filed this action against Defendant relating to the Data Security Incident. *See* Class Counsel's Joint Declaration in Support of Plaintiffs' Motion for Preliminary Approval ("Joint Decl."), attached to Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 41) as ***Exhibit B***, ¶ 2. On May 8, 2025, this Court ordered that another related action, filed by Plaintiff Swan, be consolidated with, and under, the *Pilavian* case. *Id.* On June 6, 2025, Plaintiffs filed a Consolidated Amended Complaint ("Compl."), asserting claims against Defendant for negligence, negligence per se, breach of implied contract, violation of the California Consumer Privacy Act, Cal. Civ. Code §§ 1798.100, *et seq.*, and unjust enrichment, arising from the Data Security Incident.

From the onset of the litigation and over the course of several months, the Parties engaged in extensive, arm-length settlement negotiations. *Id.* at ¶ 3. The negotiations were informed by Plaintiffs' active prosecution of the case, the comprehensive exchange of information between the Parties, and Proposed Settlement Class Counsel's ("Class Counsel") thorough examination and evaluation of the relevant law and facts to assess the merits of the claims to be resolved in this settlement and how best to serve the interests of the Settlement Class. *Id.* at ¶ 4. Defendant provided

Class Counsel with information related to, *inter alia*, the nature and cause of the incident, the number and location of individuals impacted by the Data Security Incident, and the specific type of information potentially accessed. *Id.* ¶ 5.

Based on this investigation and the negotiations described above, the Parties reached an agreement in principle to resolve all claims on a classwide basis. *Id.* ¶ 6. The Settlement Agreement was executed on February 6, 2026. *Id.* ¶ 7. The Parties did not discuss attorneys' fees and costs or potential service awards until after they reached agreement on all material Settlement terms. *Id.*

## III. SETTLEMENT TERMS

### A. The Settlement Class

The proposed Settlement Class is defined as:

> All persons residing in the United States whose PII was compromised in the Data Security Incident, including all who were sent a notice of the Data Security Incident.

Agreement ¶ 1.30. Excluded from the Settlement Class are: (i) Defendant, the Related Entities, and their officers and directors; (ii) all Class Members who timely and validly request exclusion from the Settlement Class; (iii) any judges assigned to this case and their staff and immediate family; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Security Incident or who pleads *nolo contendere* to any such charge. *Id.*

### B. Settlement Fund

The Settlement provides for a non-reversionary cash Settlement Fund of $200,000.00, used to pay (1) compensation to Class Members who submit Valid Claims; (2) all Costs of Claims Administration; and (3) any attorneys' fees, costs, and service awards awarded by the Court. *Id.* ¶¶ 1,32, 1.33.

### C. Class Member Benefits

#### 1. Out-of-Pocket Expense Reimbursement

Class Members who have suffered a proven monetary loss and who submit a Valid Claim using the Claim Form are eligible for up to $3,000 if: (1) the loss is an actual, documented and

unreimbursed monetary loss; (2) the loss was caused by the Data Security Incident; (3) the loss occurred between August 25, 2024, and the Claims Deadline; and (4) the Class Member made reasonable efforts to avoid, or seek reimbursement for, the loss, including but not limited to exhaustion of all available credit monitoring insurance and identity theft insurance, but was not previously reimbursed for the claimed expense or loss. *Id.* ¶ 2.2.

#### 2. *Pro Rata* Adjustments and Distribution of Settlement Remainder.

If there is a Settlement Remainder, it shall be distributed as a residual *pro rata* cash payment based on shares to each Class Member who submits a Valid Claim, with each Class Member who is not a California resident receiving one share of the Settlement Remainder, and each Class Member that is a California Resident receiving two total shares of the Settlement Remainder. The enhanced allocation of shares for California Residents is intended to account for and resolve claims for statutory damages that may be available to California Residents under the CCPA, Cal. Civ. Code § 1798, *et seq.* as described in ¶¶ 1.24, 1.35 of the Agreement. In the unexpected event that the Settlement Fund is insufficient to cover the value of the Valid Claims, the Valid Claims shall be reduced *pro rata* on an equal percentage basis as necessary to bring the cost within the Settlement Fund. *Id.* ¶ 2.5.

### D. Preliminary Approval, Notice, Objections and Exclusions, and Approved Claims

#### a. Preliminary Approval.

On February 6, 2026, Plaintiffs filed their Motion for Preliminary Approval, seeking preliminary approval of the Settlement, approval the proposed Notice Plan, requesting that direct notice be given to the Settlement Class, and scheduling a Final Approval Hearing. (ECF No. 41). On March 19, 2026, the Court granted Plaintiffs' motion. (ECF No. 43).

#### b. Notice.

Pursuant to the Preliminary Approval Order, on April 23, 2026, the Claim Administrator, CPT Group, Inc. ("CPT") disseminated the Short Notice by First Class Mail to the 987 Class Members on the Class List. *See* Declaration of Irvin Garcia (on behalf of CPT Group, Inc.)

Regarding Settlement Administration ("Garcia Decl."), attached hereto as ***Exhibit A***, ¶ 12. Prior to mailing, CPT checked all mailing addresses against the National Change of Address (NCOA) database to ensure that notices were sent to the most current addresses available. *Id.* Notice was also provided via a dedicated Settlement Website (www.NABCOdatanotice.com), which went live on April 23, 2026. *Id.* ¶ 8.

The notice instructed Class Members of their legal rights and options in this Settlement, including: the option to submit a Claim Form to receive monetary payment for losses suffered; the option to ask to be excluded from the Settlement and retain the right to bring an individual action against Defendant; the option to object to the Settlement; the option to attend the Final Approval Hearing; and the option to do nothing and not receive a monetary payment from the Settlement. (ECF No. 41-1).

**c. Objections and Exclusions.**

The deadline for Class Members to opt out of the Settlement Class or file and serve a written objection was June 22, 2026. Garcia Decl. ¶ 23. As of September 1, 2026, CPT has received 1 opt-out request and no objections. *Id.* ¶¶ 24-25.

**d. Approved Claims.**

The Claims Deadline for Class Members to submit a Claim Form was July 22, 2026. *Id.* ¶ 19. As of September 1, 2026, CPT has received a total of 29 valid Claim Forms. *Id.* This represents a claims rate of approximately 2.93% based on a Class List of 987 individuals. *Id.*

Upon receipt of a Claim Form, CPT reviewed each submitted Claim Form to determine whether it was valid, invalid, or deficient. *Id.* ¶ 20. When a Claim Form was determined to be deficient, CPT sent a notice of deficiency advising the Class Member of the deficiency and providing the Class Member an opportunity to cure the deficiency. *Id.*

As of September 1, 2026, CPT has received zero Valid Claims for Out-of-Pocket Expenses and 29 Valid Claims for Pro-Rata Cash Payments. *Id.* ¶¶ 21-22.

If the Court (i) grants Plaintiffs' request to award Plaintiffs $2,000.00 service awards, $50,000.00 in reasonable attorneys' fees, and $2,137.59 in litigation expenses and (ii) approves

approximately $18,500.00 for the Costs of Claims Administration, $125,362.40 of the $200,000.00 Settlement Fund will remain for payments to Class Members. Dividing this amount equally among the 29 claimants to date would result in an average payment of **$4,322.84** to each claimant, an exceptional result in a data breach case.

The "common fund" settlement obtained for Plaintiffs and Settlement Class Members is an exemplary result for a data breach settlement. Below are example orders within the Ninth Circuit granting preliminary or final approval of common fund settlements in data breach cases arising from cyberattacks, confirming the result achieved in this Settlement:

- $3.75 per class member: *In Re PostMeds, Inc. Data Breach Litig.*, No. 23-CV-05710-HSG, 2024 WL 4894293 (N.D. Cal. Nov. 26, 2024) (granting preliminary approval) ($7.5 million fund for approximately 2 million class members)
- $10.04 per class member: *Peterson v. Vivendi Ticketing US LLC*, No. CV 23-7498-MWF (DFMX), 2024 WL 3915154 (C.D. Cal. June 20, 2024) (granting preliminary approval) ($3.25 million fund for approximately 323,498 class members)
- $7.14 per class member: *Harbour v. California Health & Wellness Plan*, No. 5:21-CV-03322-EJD, 2024 WL 171192 (N.D. Cal. Jan. 16, 2024) (granting final approval) ($10 million fund for approximately 1.4 million class members)
- $3.74 per class member: *Guy v. Convergent Outsourcing, Inc.*, No. C22-1558 MJP, 2023 WL 8778166 (W.D. Wash. Dec. 19, 2023) ($2.45 million fund for approximately 640,906 class members)
- $50.60 per class member: *In re Solara Medical Supplies Data Breach Litigation* No. 3:19-CV-2284-H-KSC, 2022 WL 1174102 (S.D. Cal. May 7, 2020) (granting preliminary approval) ($5,060,000 fund for approximately 100,000 individuals)
- $113.09 per class member: *Pfeiffer v. RadNet, Inc.*, No. 220CV09553RGKSK, 2021 WL 8893644 (C.D. Cal. Aug. 18, 2021) ($2.6 million fund for approximately 22,989 individuals)

The result here ($200,000.00 for approximately 987 Class Members, or $202.63 per Class

Member) far exceeds any of these comparators.

The claims rate of **<u>2.93%</u>** as of July 7, 2025, further confirms the quality of the result obtained for the class. *See* Garcia Decl. ¶ 19. "A claims rate of 1.46% is generally in line with the rate experienced in other data breach class actions." *In re Forefront Data Breach Litig.*, No. 1:21-cv-0887-LA, 2023 WL 6215366, at *4 (E.D. Wis. March 22, 2023) (noting the approximately 1% claims rate in *Fox v. Iowa Health Sys.*, No. 3:18-cv-00327-JDP, 2021 WL 826741, at *2 (W.D. Wis. March 4, 2021)). The claims rate here has already exceeded what has been deemed adequate in other data breach cases and is still rising.

## IV. ARGUMENT

"In deciding whether to grant the motions for final approval and attorney fees, the Court analyzes (1) whether to certify a class for settlement purposes and (2) the fairness of the Settlement." *Carter v. Vivendi Ticketing US LLC*, No. SACV2201981CJCDFMX, 2023 WL 8153712, at *3 (C.D. Cal. Oct. 30, 2023).

The Court previously concluded that Plaintiffs presented sufficient evidence to show that the proposed class satisfies the requirements of Rule 23(a). *See* (ECF No. 43). Plaintiffs request that the Court adopt its prior analysis regarding class certification and grant certification of the proposed class for settlement purposes only. *See Carter*, 2023 WL 8153712, at *3 ("The Court previously concluded that Plaintiffs presented sufficient evidence to show that the proposed class satisfies these requirements. Having reviewed those requirements again, the Court adopts its prior analysis regarding class certification and grants certification of the proposed class for settlement purposes only.") (citation to record omitted).

### A. The Settlement is Fair, Reasonable, and Adequate.

Under Fed. R. Civ. P. 23(e), the court may approve a class action settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate." *In re 23Andme*, No. 24-md-03098-EMC, 2024 U.S. Dist. LEXIS 219622, (N.D. Cal. Dec. 4, 2024) at *50 (quoting Fed. R. Civ. P. 23(e)). In recent years, "Congress amended Rule 23(e)(2) to provide specific factors for a district court to consider in determining whether a settlement is 'fair, reasonable, and adequate.'"

*Id*. (quoting *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 607 (9th Cir. 2021)). The factors are whether "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." *Id.* (quoting Fed. R. Civ. P. 23(e)(2)).

**1. Adequate Representation**

As detailed above, Class Counsel provided adequate representation—as evidenced by the Settlement, which provides timely and tailored relief to Plaintiffs and Class Members. *See* Joint Decl. ¶ 12. Moreover, Class Counsel has substantial experience in complex litigation and data breach class actions. *Id*. ¶¶ 11-13. Thus, this factor weighs toward final approval. *See, e.g., In re Loandepot*, 2025 U.S. Dist. LEXIS 6335, at *7 (finding adequacy satisfied); *In re 23Andme*, 2024 U.S. Dist. LEXIS 219622, at *47 (same); *see also Gupta v. Aeries Software, Inc*., No. SA CV 20-0995 FMO (ADSx), 2023 U.S. Dist. LEXIS 36141, at *12 (C.D. Cal. Mar. 3, 2023) (finding this factor weighed toward approval when counsel "had a sound basis for measuring the terms of the settlement").

**2. Arm's Length Negotiations**

The Settlement was the product of arm's length negotiations. *See* Joint Decl. ¶¶ 3, 8. Additionally, the Settlement was secured only after the Parties exchanged informal discovery—which enabled the Parties to better evaluate their respective claims and defenses. *See id*. ¶ 15. Such facts are significant because settlements are presumed fair if they "follow sufficient discovery and genuine arms-length negotiation." *Adoma v. Univ. of Phx., Inc*., 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 528 (C.D. Cal. 2004)); *see also Gupta*, 2023 U.S. Dist. LEXIS 36141, at *11 (holding that

this factor weighed toward approval when the "settlement was reached as a result of intensive, arm's-length negotiations"). Thus, this factor supports approval.

**3. Adequate Relief**

**i. Costs, Risks, and Delay**

The Settlement provides adequate relief—especially in light of the costs, risks, and delays posed by protracted litigation. Joint Decl. ¶ 16. For example, in the data breach case *Gupta*, the court held that this factor supported approval because "even putting aside defendant's defenses, and assuming class certification were granted and upheld on appeal, defeating summary judgment, winning the case at trial, and then sustaining the final judgment on appeal would be extremely difficult." 2023 U.S. Dist. LEXIS 36141, at *13. Therein, the court reasoned that "it is significant that class members will receive a monetary recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Id.* (quoting *Nat'l Rural Telecomms. Coop*., 221 F.R.D. at 526 (C.D. Cal. 2004)) (cleaned up). Here, this factor supports approval because the Settlement guarantees relief—as opposed to the mere possibility of relief in the future. Joint Decl. ¶ 17.

**ii. Effectiveness**

The Settlement is effective because the relief provided is tailored to the specific injuries of Class Members (i.e., the Settlement will allocate funds according to the out-of-pocket losses suffered by Class Members). Agreement ¶ 2; Joint Decl. ¶ 18. Thus, this factor weighs toward approval. *Gupta*, 2023 U.S. Dist. LEXIS 36141, at *14 (C.D. Cal.) (holding that "this factor weighs in favor of approval" when "class members were required to submit claim forms to obtain monetary relief").

**iii. Attorneys' Fees**

"California has recognized that most fee awards based on either a lodestar or percentage calculation are 33 percent and has endorsed the federal benchmark of 25 percent." *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1262 (C.D. Cal. 2016) (citations omitted). It is "not uncommon for courts to award one-third of the gross settlement fund as attorneys' fees where the

circumstances warrant it." *Sevilla v. Aaron's, Inc.*, 2020 U.S. Dist. LEXIS 86994, 2020 WL 10573205, at *2 (C.D. Cal. May 15, 2020).

The Settlement is adequate insofar as Plaintiffs seek up to 25% of the Settlement Fund as attorney fees, plus unreimbursed litigation costs and expenses up to $20,000.00. Agreement ¶ 7.2. This supports approval because courts in this District have approved attorneys' fees *above* the 25% benchmark in similar data breach cases. *See, e.g., Medoff v. Minka Lighting, LLC*, No. 2:22-cv-08885-HDV, 2024 U.S. Dist. LEXIS 235592, at *2 (C.D. Cal. 2024) (approving award of one-third of the settlement fund in data breach case); *see also Koenig v. Lime Crime, Inc.*, No. CV 16-503 PSG (JEMx), 2018 U.S. Dist. LEXIS 245459, at *11 (C.D. Cal. Apr. 2, 2018) (approving award of 38% of the common fund in data breach case). Plaintiffs' request for attorneys' fees at the 25% benchmark is, thus, reasonable.

**iv. Service Awards**

The Service Awards in the amount of $2,000.00 for each Representative Plaintiff are reasonable and consistent with awards in similar cases. *See In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 U.S. Dist. LEXIS 129939, at *33 (N.D. Cal. July 22, 2020), aff'd, No. 20-16633, 2022 U.S. App. LEXIS 17680 (9th Cir. June 27, 2022) (approving $2,500 to $7,500 awards in data breach cases). The Representative Plaintiffs have actively participated in this litigation from its inception, providing valuable information to Class Counsel, reviewing and approving pleadings, and dedicating themselves to pursuing litigation on behalf of the Settlement Class. Joint Decl. ¶ 19.

**v. Other Agreements**

Here, this factor is inapplicable because there are no "agreements required to be identified under Rule 23(e)(3)." *See, e.g., Gupta*, 2023 U.S. Dist. LEXIS 36141, at *16 (C.D. Cal.); *Carter*, 2023 U.S. Dist. LEXIS 210744, at *27 (C.D. Cal.); Joint Decl. ¶ 20.

**4. Equitable Treatment**

The Settlement provides equitable treatment, as Class Members may claim relief according to the specific harms suffered. Agreement ¶ 2; Joint Decl. ¶ 21. Thus, this factor also

weighs towards approval. *See, e.g.*, *In re 23Andme*, 2024 U.S. Dist. LEXIS 219622, at *68 (finding that a settlement provided equitable treatment when monetary relief was allocated according to the injuries suffered); *Carter*, 2023 U.S. Dist. LEXIS 210744, at *34 (holding that "the Settlement treats class members equitably" when "[c]lass members may receive differing payouts under the Settlement depending on what documentation they have of their ordinary and extraordinary costs"). In sum, the Settlement is fair, reasonable, and adequate under Fed. R. Civ. P. 23(e).

### B. The Settlement Is Proper Under *Briseño* and Satisfies the *Bluetooth* Factors.

In the Ninth Circuit, class action settlements are often reviewed for the "three red flags" delineated by *Briseño v. Henderson*, 998 F.3d 1014, 1026 (9th Cir. 2021). These "three red flags" are also called the "*Bluetooth*" factors. *Id*. The three factors are: "(i) if class counsel receives a disproportionate distribution of the gross settlement amount; (ii) if any of the gross settlement amount reverts to the defendant; and (iii) if there is a 'clear sailing arrangement.'" *Hashemi v. Bosley, Inc.*, No. CV 21-946 psg (RAOx), 2022 U.S. Dist. LEXIS 210946, at *17 (C.D. Cal. Nov. 21, 2022). None of the red flags are present here. First, Class Counsel will request up to 25% of the Settlement Fund, which is the benchmark for fee awards accepted by courts. Joint Decl. ¶ 22. Second, the Settlement Fund is *non-reversionary* such that no amount of the Settlement will revert to Defendant. *See* Agreement ¶ 2.5. Third, the Settlement Agreement does not contain a clear sailing provision. *See id.*, generally.

Thus, the Settlement is proper under *Briseño*, and the Court should grant final approval. *See, e.g.*, *Hashemi*, 2022 U.S. Dist. LEXIS 210946, at *22 ("After considering each of the *Briseño* factors, the Court finds that the Settlement Agreement, on balance, was not collusive or based on inappropriate self-interest."); *Gupta*, 2023 U.S. Dist. LEXIS 36141, at *15–16 (holding that "although the Settlement Agreement includes an implicit clear sailing provision . . . any fees not awarded will not revert to defendant; instead, fees will be added to the net settlement fund, from which payments to class members will be made . . . [t]hus, there is no issue").

### C. The Settlement Satisfies the *Hanlon* Factors.

At final approval, courts in the Ninth Circuit consider the eight factors provided by *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th Cir. 1998).[2] Specifically, "[i]n determining whether a settlement is fair, reasonable, and adequate, courts must balance a number of factors: [1] the strength of the plaintiffs' case; [2] the risk, expense, complexity and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed and the stage of proceedings; [6] the experience and views of counsel; [7] the presence of a government participant; and [8] the reaction of the class members to the proposed settlement." *Hashemi*, 2022 U.S. Dist. LEXIS 210946, at *6 (quoting *Hanlon*, 150 F.3d at 1026). As detailed below, the *Hanlon* factors support final approval because one factor is inapplicable and the other seven weigh toward final approval.

**1. The Strength of Plaintiffs' Case.**

In the data breach context, evaluating the strength of a case is difficult because "there have been no data breach cases tried to verdict, and only a handful of cases have achieved class certification." *In re Postmeds*, 2024 U.S. Dist. LEXIS 215466, at *23. Indeed, in *In re Postmeds*, the court approved a $7.5 million common fund settlement—even when the estimated full recovery was approximately $50 million. *Id.* at *24. Similarly, in *In re 23Andme*, the court approved a $30 million common fund settlement when the potential recovery was "almost $50 billion in damages . . . if the class were to completely prevail at trial[.]" 2024 U.S. Dist. LEXIS 219622, at *54.

Here, the strength of Plaintiffs' case is uncertain. Joint Decl. ¶ 23; *Peterson*, 2024 U.S. Dist. LEXIS 155397, at *14 (C.D. Cal.) (noting that "if litigation were to proceed, there is a fair possibility that Plaintiffs and/or the Settlement Class do not prevail"). After all, [w]ithout a compromise, there [is] little guarantee of any benefit to the Settlement Class without a substantial

[2] The *Hanlon* factors are occasionally called the "*Staton* factors" or the "*Churchill* factors." *See Briseño*, 998 F.3d at 1023 (discussing the "*Hanlon/Staton* factors"); *Harbour*, 2024 U.S. Dist. LEXIS 7783, at *12 (discussing the "*Churchill* factors").

amount of further litigation." *Harbour*, 2024 U.S. Dist. LEXIS 7783, at *13. As such, "[t]his factor weighs strongly in favor of the settlement." *Id*.

**2. The Risks, Expense, Complexity, and Duration of Further Litigation.**

In data breach cases, protracted litigation poses substantial risks—especially in terms of establishing liability and damages. *In re 23Andme*, 2024 U.S. Dist. LEXIS 219622, at *55 (N.D. Cal. Dec. 4, 2024) (explaining that "on liability for the negligence-based claims, [defendant] could argue contributory negligence if a [class member] recycled login credentials or failed to use a unique password" and that "if the class asserts that [class members] suffered losses as a result of the data breach, quantifying those losses—which could be both economic and noneconomic—could be difficult" and that "variation in individual injuries suffered and potential damages claimable, while not necessarily preclusive of certification under Rule 23(b)(3) as noted above, poses challenges"); *see also Harbour*, 2024 U.S. Dist. LEXIS 7783, at *13 (noting that "this factor favors the settlement" because the "data breach injury asserted is legally unproven, technically complex, and potentially of little value").

Class litigation poses substantial risks of "denial or reversal of class certification . . . losing on summary judgment or at a jury trial . . . [or] revers[al] on appeal" which would "effectively extinguish any hope of recovery by the Settlement Class." *In re Postmeds*, 2024 U.S. Dist. LEXIS 215466, at *24; *see also Carter*, 2023 U.S. Dist. LEXIS 210744, at *16 ("Even if Plaintiffs could secure a better result than the Settlement represents at trial, any result obtained then would take significantly longer and there is a risk that Plaintiffs could have received much less, or nothing at all."). These risks are likewise present here—and this factor weighs toward approval. Joint Decl. ¶ 24.

**3. The Risk of Maintaining Class Certification.**

Without this Settlement, Plaintiffs would eventually face the risks of obtaining (and then maintaining) class certification. Joint Decl. ¶ 25. "Historically, data breach cases have experienced minimal success in moving for class certification." *Carter*, 2023 U.S. Dist. LEXIS 210744, at *16–17 (quoting *Gaston v. Fabfitfun, Inc.*, No. 2:20-cv-09534-RGK-E, 2021 U.S. Dist.

LEXIS 250695, at *6 (C.D. Cal. Dec. 9, 2021)). These risks support approval because "the notion that a district court could decertify a class at any time is an inescapable and weighty risk that weighs in favor of a settlement." *Harbour*, 2024 U.S. Dist. LEXIS 7783, at *13.

**4. The Amount of the Settlement.**

The Settlement provides $200,000.00 for a class of 987 ($202.63 per Class Member). Agreement ¶ 1.31, 1.32; Joint Decl. ¶ 26. This strongly weighs toward approval because "other courts have approved settlements in privacy and security cases when each class member received just a few dollars or less." *Carter*, 2023 U.S. Dist. LEXIS 210744, at *13. Indeed, this Settlement provides more value per Class Member than analogous data breach settlements. *See, e.g., In re Loandepot Data Breach Litig.*, No. 8:24-cv-00136 DOC-JDEx, 2025 U.S. Dist. LEXIS 6335, at *4 (C.D. Cal. Jan. 13, 2025) ($25 million common fund for a class of 16,924,007 ($1.48 per class member)); *In re 23Andme*, 2024 U.S. Dist. LEXIS 219622, at *23 ($30 million common fund for a class of approximately 6.4 million ($4.69 per class member)); *Harbour*, 2024 U.S. Dist. LEXIS 7783, at *10, 14 ($10 million common fund for a class of approximately 1.4 million ($7.14 per class member)).

**5. Investigation and Discovery.**

This Settlement is the product of robust informal confirmatory discovery—which enabled the Parties to better evaluate the strengths and weaknesses of their respective claims and defenses. Joint Decl. ¶¶ 5, 15. In particular, Defendant provided information to Plaintiffs including: the nature and cause of the incident, the number and location of individuals impacted by the Data Security Incident, and the specific type of information potentially accessed. *Id.* ¶ 5. This information is significant because "[f]ormal discovery is not necessary where the parties have sufficient information to make an informed decision about the settlement." *Peterson*, 2024 U.S. Dist. LEXIS 155397, at *11 (quoting *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1239 (9th Cir. 1998)) (cleaned up). Thus, this factor weighs toward final approval.

**6. The Experience and Views of Counsel.**

Here, Class Counsel has substantial experience in complex litigation and data breach class actions. Joint Decl. ¶¶ 13, 27. Based on this experience, Class Counsel believe this Settlement is fair, reasonable, adequate, and in the best interests of Class Members. *Id.* ¶ 28. Such a recommendation is significant because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation" and "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Harbour*, 2024 U.S. Dist. LEXIS 7783, at *15 (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009); *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008)). Thus, this factor weighs toward final approval.

**7. The Presence of a Government Participant.**

This factor is inapplicable because the Settlement does not involve any government participant. *See* Agreement, generally.

**8. The Reaction of Class Members.**

Only one Class Member requested to opt out of the Settlement, no Class Member filed an objection. "These numbers indicate strong overall support for the Settlement and weigh in favor of granting final approval." *Carter*, 2023 WL 8153712, at *9 (finding same where one exclusion and one objection were filed).

Moreover, the claims rate of 2.93% as of September 1, 2026, further weighs in favor or granting final approval. *See id.* ("To begin, the 1.6% claims rate is in line with claims rates in other data breach class action settlements that courts have approved.").

## V. CONCLUSION

For the reasons set forth set forth above, final approval of the Settlement and certification of the Settlement Class are warranted. Accordingly, Plaintiffs request the Court (i) enter an order granting this motion and Plaintiff's Unopposed Motion for Attorney's Fees, Expenses, and Service Awards to Plaintiffs and (ii) enter a Final Approval Order and judgment dismissing this case.

DATE: September 8, 2026

Respectfully submitted,

By: /s/ M. Anderson Berry
M. Anderson Berry (SBN 262879)
Gregory Haroutunian (SBN 330263)
**EMERY REDDY, PC**
333 University Ave., Suite 200
Sacramento, CA 95825
Tel: (916) 823-6955
*anderson@emeryreddy.com*
*gregory@emeryreddy.com*

Kristen Lake Cardoso (SBN 338762)
**KOPELOWITZ OSTROW P.A.**
One W. Las Olas Boulevard, Suite 500
Fort Lauderdale, Florida 33301
Tel: (954) 990-2218
*cardoso@kolawyers.com*

*Interim Co-Lead Counsel for Plaintiffs and the Putative Class*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6.2

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 4,799 words, which complies with the word limit of L.R. 11-6.1.

By: /s/ M. Anderson Berry
M. Anderson Berry

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

By: /s/ M. Anderson Berry
M. Anderson Berry